**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **POLYONE CORP.,** | ) | Case No. 1:11 CV 686 |
| | ) | |
| Plaintiff, | ) | Judge Dan Aaron Polster |
| | ) | |
| vs. | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| **APRIL BARNETT,** | ) | |
| | ) | |
| Defendant. | ) | |

Before the Court are the following pending motions: (1) Motion for Temporary Restraining Order ("Motion for TRO") (**Doc #: 2**) and (2) Plaintiff's Motion for Expedited Discovery and for a Protective Order (**Doc #: 4**). For the following reason, the Motions (Doc ##: 2 and 4) are hereby **DENIED**.

**I.**

Asserting diversity jurisdiction, Plaintiff PolyOne Corporation ("PolyOne") filed a Complaint for Temporary Restraining Order, Preliminary Injunction, Permanent Injunction and Damages against former employee, Defendant April Barnett on April 6, 2011. (Doc. # 1.) Along with the complaint, Polyone filed a Motion for TRO, a Motion for Expedited Discovery, etc., and a Motion for Preliminary Injunction. (Respectively, Doc ##: 2, 4, 5.)

PolyOne alleges that Barnett breached a non-compete and confidentiality agreement (the "Agreement") she signed as a condition of her participation in PolyOne's long-term incentive

plan (Count I) and that, due to her previous position at PolyOne, will "inevitably" misappropriate its trade secrets in violation of the Ohio Uniform Trade Secrets Act, O.R.C. §§ 1333.61 *et seq*. (Count II).  Specifically, PolyOne asserts that Barnett accepted employment with its direct competitor, Bayshore Industrial ("Bayshore"), in breach of the Agreement and that as a result, she will "inevitably disclose confidential and proprietary trade secret information belonging to PolyOne through her work for Bayshore." (Doc #: 1 ¶ 42.)

With regard to emergency injunctive relief, PolyOne seeks a court order:

(1) prohibiting Barnett from further breaches or attempted breaches of the Agreement;

(2) prohibiting Barnett from disclosing, using or in any way disseminating PolyOne's confidential information;

(3) prohibiting Barnett from commencing or continuing employment with, or providing any services to, Bayshore Industrial at its LaPorte, Texas facility, or any related or affiliated companies;

(4) requiring Barnett to return to PolyOne any and all confidential information in her possession; and

(5) obligating Barnett to preserve all PolyOne documents and confidential information related to its claims.

(Doc #: 2, at 1-2.)  The Court held a teleconference with counsel on April 6, 2011, at which time the parties agreed to confer and attempt to reach a temporary agreement in lieu of immediate injunctive relief pending a scheduled in-person conference set for Monday, April 11, 2011. (Doc #: 8.)

In the meantime, Defendant Barnett filed a letter brief with the Court in opposition to PolyOne's Motion for TRO. In the letter, dated April 8, 2011, Barnett argues that the non-compete covenant is unreasonably overbroad as PolyOne seeks to apply it to her, and that it is unenforceable under Ohio law. She denies disclosing any of PolyOne's confidential information or trade secrets and has not contacted any PolyOne customers that were not pre-existing customers at Bayshore.

On April 11, 2011, the Court held an in-person conference with counsel and the parties. At conference, efforts to resolve the parties' dispute were unsuccessful, and the parties agreed to continue conferring in the hopes of reaching a mutually agreeable resolution.

On April 15, 2011, the Court held a follow-up teleconference with counsel at which time counsel advised the Court that the parties were unable to reach consensus. PolyOne's counsel also informed the Court that his client had just filed an amended complaint adding a claim for tortious interference with Barnett's noncompete contract against Bayshore's parent company, A. Schulman. (Doc. #: 9 ¶¶ 49-53.)[1] The Court directed the parties to submit a schedule for briefing and a combined hearing on Plaintiffs' pending motion for a preliminary and permanent injunction, and the parties agreed to maintain the status quo pending the Court's ruling on the preliminary and permanent injunction motion.

The Court is now prepared to rule on Plaintiff's Motion for TRO and Motion for Expedited Discovery, etc.

---

[1] Defendant, A. Schulman, has filed a motion to dismiss for lack of subject matter jurisdiction on the basis that there is not complete diversity among the parties as both A. Schulman's and PolyOne's principal places of business are in Ohio. (Doc. #: 14). The issue of jurisdiction has not yet been fully briefed and is not yet ripe for a decision. Pending a decision on the issue, the Court will address the instant dispute, which arose prior to the amending of the Complaint and deals only the equitable relief sought against Barnett.

## II.

The following comprise the facts as alleged in the Complaint and ascertained at the April 11, 2011 conference.  PolyOne is a provider of specialized polymer materials and services that has operations worldwide.  Its polymer products include plastic compounds, colorants, specialty vinyl resins, and speciality additives, among others.   One of its Producer Services facilities is located in Seabrook, Texas.  At its Seabrook facility, PolyOne manufactures proprietary products on a contract basis for resin producers, processors, and original equipment manufacturers.  PolyOne's work on these projects is confidential.  Bayshore Industrial is a competitor of PolyOne and has a facility in LaPorte, Texas, approximately five miles from PolyOne's Seabrook facility.  At the April 11 conference, it was learned that Bayshore sells certain proprietary products to PolyOne, which until now has shown no apparent interest in that part of the polymers manufacturing business.

 Since 1992, Barnett has worked at the Seabrook facility, which was previously operated by PolyOne's predecessor in interest, SW Chemical.  Prior to working for SW Chemical, Barnett had been employed at Union Carbide since 1984.  While with PolyOne, Barnett was promoted over the years and consistently held management positions.  From 2006 to 2011, Barnett was the Marketing Director for Producers Services at PolyOne's Seabrook Facility.  As such, she qualified for participation in PolyOne's long-term incentive plan.

In 2007, PolyOne began requiring certain employees to sign non-compete and confidentiality agreements, including Barnett.  As part of the Agreement, Barnett (who signed the Agreement on April 21, 2007) agreed to not compete with PolyOne for a period of one year after the termination of her employment.  The Agreement includes a provision defining the

Restricted Territory in which former employees may not work during that one-year period following termination of their employment.

The Restricted Territory is defined according to the employee's former job duties. The first category applies to employees with marketing experience and forbids them from working within a fifty mile radius of the facility at which the employee previously worked and from soliciting any customer with which the employee previously had contact with or responsibility for. The second category prohibits a former employee from working within an area of business for which the employee had technical responsibility regardless of geographic location. The third category restricts employees with product sourcing responsibilities from working with prohibited competitors that are within the business unit for which they had responsibilities. The prohibited competitors include Bayshore and A. Schulman. Finally, the fourth category applies to employees who participate in the long-term incentive plan and restricts them from working for any prohibited competitor, including Bayshore and A. Schulman. The third and fourth categories do not contain geographic restrictions.

The confidentiality provisions of the Agreement provide that employees will protect all of PolyOne's confidential and trade secret information and that they will return such information upon termination of employment. In addition, PolyOne has a code of conduct that also emphasizes the importance of maintaining confidentiality.

Barnett asserts that, in August 2010, PolyOne demoted her, removed her from the long-term incentive plan, reduced her standard incentive compensation and removed her from the leadership team. In her letter brief, Barnett asserts that participation in the long-term incentive plan was a material inducement for her execution of the noncompete agreement – and she cites

-6-

specific language in the long-term incentive plan corroborating her assertion.[2] Barnett says that she was told that PolyOne was actively recruiting a new Marketing Director as part of the company's plan to prioritize marketing and business development efforts.  At the April 11 conference, PolyOne's representative confirmed that Barnett was told she was not "the right fit" for the marketing job and that the company was moving in a different direction.  PolyOne's representative also said that they felt that Barnett was better suited to her new position.

Barnett asserts that her demotion and removal from the long-term incentive plan came as a complete surprise to her, and as the primary wage-earner in her home, she was concerned for her ability to support her family.  Consequently, on March 8, 2011, Barnett submitted her formal resignation to PolyOne and notified them of her intent to accept employment with Bayshore.  Barnett asserts that, in the month before PolyOne filed this case, she, Bayshore and PolyOne engaged in extensive discussions during which Barnett made "substantial concessions that would protect any and all legitimate business interests of PolyOne."  Further, the parties were in the midst of negotiations when PolyOne abruptly commenced this litigation.

PolyOne argues that Barnett is subject to all restrictive covenants contained in the Agreement; thus, she cannot work for any competitor, including Bayshore, in any capacity for

---

[2]The long-term incentive plan states:

> You further acknowledge that as consideration for entering into the Covenant Not to Compete, PolyOne is providing you with the opportunity to participate in PolyOne's long-term incentive plan and receive the award set forth in this Agreement.  You understand that eligibility for participation in the long-term incentive plan was conditioned upon entering into the Covenant Not to Compete.  You further understand and acknowledge that you would have been ineligible to participate in the long-term incentive plan and receive this award had you decided not to agree to the Covenant Not to Complete. . ..

April 8, 2011 letter, page 3 n.1.

-7-

one year. In support of this position, PolyOne asserts that, not only did Barnett serve as Marketing Director, but she also served as a Senior Business Manager, Product Line Manager, Technical Manager, and Sourcing Manager – each position exposing her to proprietary and confidential information. PolyOne asserts that Barnett was responsible for preparing its Strategic Plan for 2011-2014 and sat on its Gross Margin Council and that in doing so, she had access to confidential information including its proposed investments, financial projections, new products, pricing and margins, and growth plans. PolyOne asserts that absent enforcement of the Agreement and a TRO, Barnett will inevitably disclose its confidential information and trade secrets to Bayshore resulting in unfair competition.

Barnett denies the alleged extent of her role at PolyOne. She asserts that she never served as a Technical Manager and only regularly accessed information related to compounding technologies common throughout the industry and of which she was familiar prior to her employment with PolyOne. She admits that she could have accessed some technical or proprietary information in PolyOne's computer system, but rarely, if ever, had any reason to do so and has not committed any of that information to memory.

Barnett asserts that the proprietary formulas she used in calculating pricing models and generating quotes are often shared by PolyOne's customers with others in the compounding industry for the purpose of seeking quotes. Barnett states that any sourcing responsibilities she had were limited to two common commodities subject to index-based pricing that is widely known in the industry. Moreover, she assures that she is not responsible for sourcing these commodities at Bayshore.

As for her involvement in PolyOne's Strategic Plan, Barnett argues that she did nothing

more than coordinate the individual items prepared by others and that there was nothing confidential about the presentation subsequently communicated to everyone at PolyOne, including the rank-and-file workforce. She argues that any information she learned while on the Gross Margin Council changed dramatically from month-to-month, was shared with any business unit who asked for it, and is already obsolete. Finally, Barnett asserts that, prior to her departure from PolyOne, she returned her work-issued laptop and did not remove any confidential documents or files. In short, no misappropriation of confidential information has occurred or will occur. PolyOne does not contend that Barnett has disclosed confidential information; rather, it is the threat of disclosure that concerns PolyOne.

### III.

"The Sixth Circuit has explained that 'the purpose of a TRO under Rule 65 is to preserve the status quo so that a reasoned resolution of a dispute may be had.'" *Reid v. Hood*, No. 1:10 CV 2842, 2011 WL 251437, at *2 (N.D. Ohio Jan 26, 2011) (citing *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 227 (6th Cir. 1996)). "The standard for issuing a temporary restraining order is logically the same as for a preliminary injunction with emphasis, however, on irreparable harm given that the purpose of a temporary restraining order is to maintain the status quo." *Id.* (citing *Motor Vehicle Bd. of Calif. v. Orrin W. Fox, et al.*, 434 U.S. 1345, 1347 n.2 (1977)). "If the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined, then there is cause to preserve the status quo." *Id.* (citing *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)).

The Court considers four factors in determining whether to grant injunctive relief: (1) the

-9-

plaintiff's likelihood of success on the merits; (2) whether the plaintiff will suffer irreparable harm without the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction on the public interest. *Reid*, 2011 WL 251437, at *2 (citing *Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 432 (6th Cir. 2004)). The Court need not make specific findings on each factor if fewer factors dispose of the issue. *Id*. (citing *Six Clinics Holding Corp., II v. Cafcomp Sys.,Inc.*, 119 F.3d 393, 399 (6th Cir. 1997)). "[An injunction] is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Id*. (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).

PolyOne alleges that Barnett has breached the non-compete provisions of the Agreement, when she accepted employment with its direct competitor, Bayshore. To allege a breach of contract claim under Ohio law, PolyOne must establish: (1) the existence of a binding contract; (2) plaintiff's performance; (3) defendant's breach; and (4) damages or loss as a result of such breach. *MP Totalcare Serv., Inc. v. Mattimoe*, 648 F.Supp.2d 956, 962 (N.D. Ohio 2009) (citing *Hicks v. Bryan Med. Group, Inc*., 287 F.Supp.2d 795, 803 (N.D. Ohio 2003); *Doner v. Snapp*, 98 Ohio App.3d 597, 600 (1994)). "If a breach of contract involves a restrict covenant, such as a contract not-to-compete agreement, the employer must also establish the contract's validity." *Id*. (citing *Raimonde v. Van Vlerah*, 42 Ohio App.3d 308, 314 (1975)). "Courts disfavor restrictive covenants." *Id*. (citing *Clark v. Mt. Carmel Health*, 124 Ohio App.3d 308, 314 (1997). Agreements restricting a former employee from competing with a former employer will be enforced, however, if the former employer can show that (1) enforcement is required to protect its legitimate business interests, (2) the restriction does not impose an undue hardship on the

employee, and (3) the restriction is not injurious to the public. *E2 Solutions, etc. v. Hoelzer*, No. L-08-1295, 2009 WL 426426 (Ohio App.6 Dist. Feb. 20, 2009) (citing *Raimonde v. Van Vlerah*, 42 Ohio St.2d 21, paragraphs 1 and 2 of the syllabus (1975)).

Although there is no evidence at this time showing that Barnett has disclosed sensitive business information to Bayshore and Barnett has agreed not to do so, PolyOne alleges that Barnett will inevitably misappropriate its confidential trade secret information. Here, PolyOne must show that Barnett possessed a trade secret[3] and that misappropriation has occurred or is threatened. *Extracorporeal Alliance, L.L. C. v. Rosteck*, 285 F.Supp.2d 1028, 1042-43 (N.D.Ohio 2003). Proof by clear and convincing evidence is required to justify relief in trade secrets cases under O.R.C. § 1333.62. *Procter & Gamble Co. v. Stoneham*, 140 Ohio App.3d 260, 268, 747 N.E.2d 268 (Ohio Ct.App.2000).

In balancing the four factors for immediate injunctive relief, the Court finds that equitable relief is not warranted at this time. With regard to the noncompete covenant, PolyOne has taken the extreme position that Barnett cannot work for a competitor in any capacity in any location for one year. If forced to rule on the merits at this time, it would be difficult for the Court to find this covenant reasonable since it would impose an undue hardship on Barnett, who

---

[3] The Ohio Supreme Court looks to the following factors in determining whether an employee possesses a trade secret:

> (1) the extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business, i.e., by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information.

*State ex rel Besser v. Ohio State Univ.*, 89 Ohio St.3d 396, 399-400, 732 N.E.2d 373 (2000).

has spent the majority of her adult life working in the polymers industry. Furthermore, Barnett has produced evidence corroborating her assertion that she agreed to sign the noncompete agreement in exchange for participation in PolyOne's long-term incentive plan. Since it is undisputed that PolyOne unilaterally removed her from the long-term incentive plan, it is far from certain whether the Court would enforce a noncompete agreement for which the consideration has been removed. Even if PolyOne could make a preliminary showing that the restriction is reasonable and Barnett has breached it, there is no evidence at this time that PolyOne has suffered any damages as a result.

In fact, the gravamen of PolyOne's complaint is the threat of disclosure of its confidential, proprietary information to a competitor who may use that information to gain an unfair competitive advantage in the marketplace. Barnett challenges whether much of the information to which PolyOne alleges she was exposed is in fact trade secret information, denies that she has divulged any proprietary information to Bayshore, and PolyOne has no evidence at this point that Barnett has in fact disclosed such information. Furthermore, while it is true that the threat of trade secret disclosure may constitute irreparable harm, Barnett has already agreed not to divulge any trade secret information to Bayshore, has returned her work-issued computer, did not remove any files or documents in any format from PolyOne, and has agreed not to contact any of PolyOne's customers that are not already customers of Bayshore.

In short, the Court cannot grant PolyOne's Motion for TRO since PolyOne cannot show it is likely to succeed on the merits, or that it stands to suffer irreparable harm without the temporary injunction. Because Barnett has agreed not to disclose any of PolyOne's confidential trade secret to Bayshore, and the parties have agreed to maintain the status quo during briefing of

the motion for preliminary and permanent injunction and a hearing on the merits, the Motion for TRO (**Doc #: 2**) is hereby **DENIED AS MOOT**. As such, the Court also **DENIES AS MOOT** PolyOne's Motion for Expedited Discovery, etc. (**Doc. #: 4**). The Motion for Preliminary Injunction (Doc #: 5) remains pending.

The parties have submitted a proposed scheduling order (Doc.#: 12), which the Court hereby **MODIFIES** and **ADOPTS** as follows:

1) Written objections to discovery requests are due seven (7) calendar days after service of the requests;

2) Answers to interrogatories and initial document productions are due (20) calendar days after service of written discovery requests;

3) The deadline for Plaintiff's expert disclosures (including a short expert report) is May 13, 2011;

4) The parties agree to a mediation to be scheduled during the week of May 16, 2011;

5) Plaintiff's Renewed Motion for Preliminary and Permanent Injunction is due May 23, 2011;

6) The deadline for Defendants' expert disclosures (including short report) is May 27, 2011;

7) Defendants' Opposition to Renewed Motion for Preliminary and Permanent Injunction is due June 2, 2011;

8) A hearing on Plaintiff's Renewed Motion for Preliminary and Permanent

Injunction shall commence on Thursday, June 9, 2011 at 10:00 a.m. EDT.

**IT IS SO ORDERED.**

                                           */s/Dan Aaron Polster   April 21, 2011*
                                           **Dan Aaron Polster**
                                           **United States District Judge**